**STATE of Missouri, Respondent,**

v.

**Phillip ZITO, Appellant.**

**No. 55931.**

Supreme Court of Missouri,
Division No. 1.

June 14, 1971.

John C. Danforth, Atty. Gen., Jefferson City, for respondent.

Philip H. Schwarz, The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant; John J. Cosgrove, Kansas City, of counsel.

WELBORN, Commissioner.

A jury found Phillip Zito guilty of murder in the second degree. The court, under the Second Offender Law, fixed the punishment at twenty years' imprisonment. This appeal followed.

The state's version of the homicide which was the basis of the charge was found in the appellant's statement to a police officer shortly after the event. Essentially it was as follows:

Zito and Bonnie Hobbs occupied a room at the Midwest Hotel in Kansas City. In the early morning hours on January 27, 1969, Charles Victor Osborne entered the room and began "having a tussle" with Miss Hobbs. Zito told Osborne to "leave the girl alone." When the "tussle" continued, Zito took a pistol from under his pillow, sat up in bed and shot Osborne three times. Osborne fell near the door to the bathroom, then got up and sat on the toilet. Zito went to the bathroom and fired a shot

point-blank into Osborne's head. Osborne fell to the floor, still breathing. Zito took a knife from Osborne and stabbed Osborne as he lay on the floor. The police were called and Osborne died shortly after they arrived. A police officer found a bloody knife in the bathroom. Officers took a pistol from Zito.

Miss Hobbs, testifying on behalf of defendant, said that Osborne, dressed only in jockey shorts, entered the room screaming and cursing, with a knife inside his shorts. Osborne hit and choked her and cut her arm with the knife. Zito said: "Vick, take your hands off her. Don't hurt her." Osborne turned and started slashing at Zito with the knife. Shots were fired and Osborne fell to the bathroom floor.

In this Court, appellant attacks the verdict-directing instructions submitting murder in the second degree and manslaughter. The murder instruction required the jury to find that defendant made an assault upon Osborne "with certain deadly weapons, to-wit: a revolver and knife, then and there inflicting upon him, the said Charles Victor Osborne a mortal wound, * * *." Appellant's contention is that the instruction is "broader than the proof" for the reason that the state's evidence showed that the gunshot wound in the head was the cause of death and the instruction would have permitted a finding of guilt based upon inflicting of the mortal wound by a knife.

The coroner's autopsy report, relied upon by the state to establish the cause of death, did pinpoint the gunshot wound to the head as the cause of death. It noted other gunshot wounds and also stab wounds, although it did not give any detail as to the damage caused by the stab wounds. The presence of the stab wounds was consistent with the testimony of the police officer that Zito said that he stabbed Osborne as he lay, still breathing, on the bathroom floor.

The state's evidence thus supported the charge that the assault involved the use of two weapons, a knife and a gun. The questioned instruction required the jury to find that a mortal wound resulted from such assault. The evidence unquestionably permitted such a finding. Appellant would read the instruction as authorizing the jury to find that the mortal wound was inflicted by either the knife or the gun. This was not what the instruction required. It required only a finding that the assault involved both such weapons and that such assault produced the fatal wound.

This is not a case of a disjunctive submission of an element neither charged nor supported by evidence, involved in cases relied upon by appellant, such as State v. Regazzi, Mo., 379 S.W.2d 575, State v. Shepard, Mo., 442 S.W.2d 58, and State v. Taylor, 136 Mo. 66, 37 S.W. 907. Nor is it a case, such as State v. White, Mo., 445 S.W.2d 301, in which the submission might have permitted a finding of guilt based upon an offense other than that charged.

The asserted claim of error in the murder instruction here is without merit, as is the same charge against the manslaughter instruction, based upon comparable language of that instruction.

The contention that the instruction should have required the jury to find specifically what wound caused death is without merit. State v. Brinkley, 354 Mo. 1051, 193 S.W.2d 49, 55.

Appellant attacks the instruction on excusable homicide based on self-defense. The objection is that the instruction failed to distinguish between the original shooting, in which Osborne sustained abdominal gunshot wounds, and the shooting in the head as he sat on the toilet. Appellant argues that the jury might have found that the first assault was in self-defense and might have concluded that death resulted from the wounds Osborne sustained then, rather than from the subsequent shot to the head

which the jury might have found was not justified as a matter of self-defense.

■ The instruction given was in the form which has been approved. State v. Traylor, 339 Mo. 943, 98 S.W.2d 628, 631. It adequately sets forth the law of self-defense as it related to the state's theory of the case and the evidence of both parties. There was no evidentiary support for a theory of two separate interrupted assaults, one of which was justified in self-defense, with doubt as to which assault produced the death. See 41 C.J.S. Homicide § 363, p. 144. Therefore, the court did not err in failing to instruct on such theory and the instruction given was not erroneous.

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.