**STATE of Missouri, Respondent,**

v.

**Peter McGRATH, Appellant.**

**No. 61418.**

Supreme Court of Missouri,
Division No. 2.

June 10, 1980.
Rehearing Denied Sept. 9, 1980.

Wayne T. Shoeneberg, Hannegan, Knight, Kennedy, Shoeneberg & Weber Inc., St. Charles, for appellant.

John Ashcroft, Atty. Gen., S. Francis Baldwin, Asst. Atty. Gen., Jefferson City, for respondent.

ALDEN A. STOCKARD, Commissioner.

Peter McGrath, charged with capital murder was found guilty by a jury of murder in the second degree and was sentenced to life imprisonment. He has appealed from the ensuing judgment.

From the partial transcript filed in this court a detailed statement of the evidence is not possible, but appellant does not challenge the sufficiency of the evidence to authorize a finding that on October 2, 1977, he stabbed Robert Norton Dennis with a knife and inflicted wounds which caused his death.

Appellant's first point is that Instruction No. 7 is not in compliance with MAI-CR 15.14 in that an extra comma was inserted which resulted in the instruction being "confusing to the jury."

Instruction No. 7, submitted second degree murder in the precise form set forth in MAI-CR 15.14 except that in paragraph Third a comma was inserted between the words "fear" and "suddenly." Paragraph Third, in its material part and as given, reads as follows: "Third, that the defendant, Peter McGrath did not do so [intend to take the life of Robert Norton Dennis] in fear, suddenly provoked by the unexpected acts or conduct of Robert Norton Dennis, * * *." No such comma appears in MAI-CR 15.14.

Rule 28.02(c), formerly Rule 20.02(c), provides that "Whenever there is an MAI-CR instruction * * * applicable under the law to the facts, the MAI-CR instruction * * * shall be given * * * to the exclusion of any other on the same subject." MAI-CR 15.14 was applicable under the law and facts of this case, and present Rule 28.02(e) provides that "Giving * * * an instruction * * * in violation of this Rule * * * shall constitute error, its prejudicial effect to be judicially determined." In *State v. Graves*, 588 S.W.2d 495, 497 (Mo. banc 1979), the court held that "This rule has been wisely construed as meaning that any error associated with noncompliance is 'presumptively prejudicial' * * * or, as earlier put * * * any error associated with noncompliance 'must be deemed prejudicial unless the contrary clearly appears.'" Appellant relies on an incident which occurred during the deliberations of the jury to demonstrate that the presence of the comma resulted in the instruction being "confusing to the jury." The transcript shows that at some time after the jury started its deliberations, the court received a note from the jury as follows: "Would you check to see if Item No. 3, Instruction No. 7, is typed correctly." Although it does not so appear from the contents of the note, we assume the note had reference to the presence of the comma. During the discussion that followed the court asked appellant's counsel if he had "any objection to telling them [the jury] that the comma should not be there?" Counsel replied "yes," and added, "I don't want it [the instruction] changed." When asked if he wanted the instruction "to remain this way," he replied, "I don't want it

changed." He added that he was not requesting that the comma be removed and the instruction, as changed, then be read to the jury.

█ We are of the opinion that the use of the comma was an unauthorized deviation from MAI-CR 15.14 and constituted error, but that the deviation did not result in a meaning different from that expressed by paragraph Third of MAI-CR 15.14, and its use was not prejudicial. Also, any confusion was expressly waived by appellant when he rejected the offer of the court to advise the jury that the comma should be removed.

In his second and last point appellant asserts the trial court erred in allowing Dwayne Ammons to make an in-court identification of appellant as the person he had seen with the victim the day of the homicide because he did not have sufficient opportunity to observe the person, and because the in-court identification was based on prior identification at the preliminary hearing, and also was tainted because he had been shown a composite picture of appellant.

Prior to trial a hearing was held on appellant's motion to suppress "all illegally tainted identifications." In that motion reference was made only to the testimony of Dorothy Caldwell, but a general reference was made to "other witnesses" who based their identification of appellant on "the illegally obtained composite." Reference was also made to the fact that appellant was seated at the counsel table during the preliminary hearing, and that this wrongfully tainted the in-court identifications made at the trial. The transcript of the hearing on that motion is not a part of the record on this appeal.

The identification testimony of Dwayne Ammons is a part of the transcript. He testified that Robert Dennis, the victim, was his "boss" at the Arapaho Kennel where he worked, and that on October 2, 1977, a Sunday, he saw Mr. Dennis at the Kennel with another person who was a black man, and he identified appellant as that person. He stated that he saw appel-

lant twice. The first time was when he got out of an automobile at the kennel, and at that time he saw him "face-to-face" for about five seconds while appellant was walking towards him. The second time was after appellant entered the kennel, and he again saw him for about three seconds from the "front," which as he said was, "The face. Same thing." He described him as about six feet in height, "light-complected" with a "light, thin mustache," and with short hair "combed back," and wearing a three-piece tan suit. There is no evidence that the description was not reasonably correct. It was established that at the preliminary hearing he had identified appellant as the person he saw with Mr. Dennis at the kennel. At that hearing, appellant and the witness were the only two black persons present. He testified that he did not remember being shown "a picture they put together," but by way of impeachment it was established that at the preliminary hearing he testified that he was shown such a picture, and that he had then stated that it looked like the man at the kennel "except for the changes," which he identified only as "his nose."

When asked if he could identify "in court today" the person he had seen at the kennels on October 2, he stated he could, and he then pointed out appellant as that person. Appellant's objection was that "there has been no proper foundation," there has not been a "proper showing of sufficient time in eight seconds for this man to base his opinion as to who he saw out there," and the prior hearing at which he testified (the preliminary hearing) "tainted any identification he could make here today." There was no objection based on the use of a composite picture.

█ There is nothing in the record before us to indicate any police action which could have been improperly suggestive. Assuming the witness was shown a composite picture, he stated at the time that there were "changes." This indicates that the picture was not suggestive. Also, the showing of a single photograph of a defendant to a witness where there is no improper

comment or activity on the part of the officer showing the photograph does not result in impermissible suggestiveness. *State v. Goff*, 516 S.W.2d 818 (Mo.App. 1974). But in any event, the alleged improper use of the composite picture was not a basis of objection at trial, and is not now properly before us for appellate review.

 Admittedly, the periods of observation of appellant by the witness were brief, but they were not so brief that, as a matter of law, they precluded an opportunity of the witness to identify appellant and retain that identification. He had two "face-to-face" confrontations, and the contention that there was not "sufficient opportunity" to observe appellant goes merely to the weight to be given by the jurors to the identification testimony. *State v. Carson*, 501 S.W.2d 503 (Mo.App.1973); *State v. Tucker*, 451 S.W.2d 91 (Mo.1970); *State v. Bevineau*, 552 S.W.2d 67 (Mo.App.1977). There is nothing to indicate that anything improper occurred at the preliminary hearing when the witness previously identified appellant. It was proper, in fact essential, that appellant was present. A previous permissible identification does not disqualify the witness from later making an in-court identification based on an independent basis.

 Dwayne Ammons testified that his in-court identification was based solely on the fact that he observed appellant with Mr. Dennis on two occasions. There is nothing to indicate any improper pretrial confrontation or improper suggestive procedure. The trial court did not err in permitting the in-court identification of appellant by the witness.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.