**STATE of Missouri, Respondent,**

v.

**Ira HARRIS, Appellant.**

**Ira HARRIS, Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 60371, 62764.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 31, 1993.

Emily Blood, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Rudolph R. Rhodes, IV, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

Defendant appeals conviction of six counts of robbery in the first degree, § 569.020 RSMo 1986; three counts of armed criminal action, § 571.015 RSMo 1986; and one count of assault in the first degree, § 565.050 RSMo 1986. He also appeals from the denial of his Rule 29.15 motion for post-conviction relief after defendant waived an evidentiary hearing. The court sentenced defendant as a prior, persistent and Class X offender to life imprisonment on each of the robbery counts, forty years on each of the armed criminal action counts and thirty years on the assault

count. The sentences are to run concurrently.

Defendant does not challenge the sufficiency of the evidence. The facts viewed in the light most favorable to the verdict indicate that on June 24, 1989, defendant entered a Sunoco station, which Milton Poole owned. Defendant asked Poole for a water bucket. Defendant took the bucket and returned with it later, placing the bucket outside the door. When Poole opened the door to retrieve the bucket, defendant came around the corner with a gun. Defendant told Poole, Willie Poole and Eddie Burks to lie on the floor, and he ordered them to give him their money. Milton Poole gave him $3,300 that was in a safe. The defendant then fired his gun three times. The first two shots misfired, while the third shot went through some cases of soda stacked next to where Milton Poole had been sitting. Defendant left, and Milton Poole called the police.

In a separate incident, on June 27, 1989, William McKay, manager of Westinghouse Electric Supply, was in his office when he heard someone say, "This is a holdup. Put your head down. Don't look up." McKay glanced up anyway and saw a gun pointed at him over a five-foot partition. McKay could only see defendant from the nose up because defendant was standing on the other side of the partition. Defendant asked McKay where the money was kept. McKay opened the file cabinet, retrieved the money boxes and dumped them on the floor. Defendant also ordered McKay to empty his pockets, the contents of which included a wallet with eighty dollars, car keys and a cigarette lighter.

Defendant took McKay to another office and made him lie on his stomach. Defendant tied McKay's hands and feet together with a telephone cord, and then left. McKay called the police about an hour later. After the phone call, he discovered his car had been stolen. The police found McKay's car later that day. They seized a blue baseball cap, which they found in the car. McKay claimed ownership of the cap. Defendant's fingerprints were found in the car. Two days later, the police brought a photospread for McKay to see if he could identify anyone.

McKay covered up the lower half of the photos to try to identify his assailant. He could not make a positive identification, but he picked out defendant's photo and stated the photo "could have been the guy." He did identify defendant in court.

In another separate incident, on June 29, 1989, Nathan Shoemaker, manager of Engine Essentials, was working behind the counter with Ken Rinne, making sales to customers. Defendant asked everyone present to give him their money, which they did. Shoemaker also gave defendant about $500 that was in the cash box. Defendant left, and Shoemaker called the police.

Later that same day, police arrested defendant. He admitted to all the robberies. Defendant was subsequently convicted and sentenced. On July 1, 1991, he filed a *pro se* motion under Rule 29.15 for post-conviction relief. Appointed counsel filed a timely amended motion. Defendant chose not to present evidence to the motion court; he asked the motion court to base its findings of fact and conclusions of law on the motion as written. The motion court denied defendant's motion without an evidentiary hearing. This consolidated appeal followed.

■ Defendant presents five points on appeal. In his first point, defendant contends the trial court erred in denying his motion to quash the jury panel. Defendant argues it was error for the trial court not to require the prosecutor to give race-neutral reasons for her three peremptory strikes of black venirepersons and one strike against a black alternate. The state concedes this point. We agree with the parties. We remand for a *Batson* hearing in accord with *State v. Parker*, 836 S.W.2d 930 (Mo. banc 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992). *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988).

■ In his second point, defendant contends the trial court erred in overruling his motion to suppress William McKay's out-of-court identification of defendant. He also contends the trial court erred in allowing

McKay to make an in-court identification of defendant because the in-court identification was unreliable. We find no error.

Defendant "first must demonstrate that the investigative procedures employed by the police were impermissibly suggestive, and then that the suggestive procedures made the identification at trial unreliable." *State v. Vinson*, 800 S.W.2d 444, 446 (Mo. banc 1990). Defendant must clear the suggestiveness hurdle before procuring a reliability review. *Id.*

Defendant has failed to show how the pretrial procedures were impermissibly suggestive. In fact, the procedures could not have been suggestive of anything harmful to the defendant since McKay was unable to make a positive identification from the photospread. *See State v. McKinney*, 498 S.W.2d 768, 770 (Mo.1973).

Moreover, mere indefiniteness and uncertainty of an identification affects the weight, not admissibility, of a witness' testimony. *State v. Miller*, 774 S.W.2d 578, 580 (Mo.App.1989). Both McKay's failure to identify defendant from the photospread and his in-court identification of defendant were proper subjects of cross-examination and could be considered by the jury in assessing the credibility of the witness. The trial court did not err in admitting McKay's tentative out-of-court identification of defendant and allowing McKay to make an in-court identification. Point denied.

In his third point, defendant contends the motion court erred in denying his motions to vacate, set aside, and correct judgment and sentence because he was denied his right to effective assistance of counsel. He argues his counsel was ineffective for failing to provide his Department of Corrections medical records to court-ordered psychiatrists. We surmise he believes these records would have resulted in a finding of mental disease or defect to support a defense on medical grounds.

Appellate review of a judgment denying a Rule 29.15 motion for post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(j); *State v. Henderson*, 826 S.W.2d 371, 377 (Mo.App.E.D.1992). "The order is clearly erroneous only if a review of the entire record leaves this court with a definite and firm impression that a mistake has been made." *Id.*

To establish a claim for ineffective assistance of counsel, defendant must prove his counsel's performance was deficient and the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Sanders v. State*, 738 S.W.2d 856 (Mo. banc 1987).

At the hearing on May 22, 1992, defendant expressed his desire to submit his motion to the court without presenting evidence. The order of the motion court states:

This court specifically finds that defendant has failed to present to this Court anything other than bare allegations. This Court further finds that movant acted in a calm, logical, rational manner in the proceedings in open Court and articulated rational, if perhaps ill-advised reasons for proceeding without presenting evidence in this matter. Movant's ability to understand the proceedings and actively participate in them directly contradicts movant's allegations that he is or was suffering from a mental disease or defect. The Court further finds that movant has failed completely in showing that counsel was in any way ineffective.

We adopt the findings of the motion court. At the hearing, defendant waived his opportunity to present evidence supporting his motion. He failed to prove trial counsel's performance was deficient and that it prejudiced his defense. Point denied.

In his fourth point on appeal, defendant contends the trial court erred in denying his motion to quash the indictment, or in the alternative, to stay the proceedings, because the grand-jury and petit-jury selection procedures in the City of St. Louis violated his rights to due process and a fair trial. He argues the trial court failed to comply with the declared policy of §§ 494.400–494.505 RSMo 1989. These statutes require selection of petit jurors from a random cross-

section of citizens. Defendant's claim of denial of a jury reflecting a fair cross-section of the citizens of the City of St. Louis is not supported by relevant, current data, and is therefore insufficient. *State v. Wheeler*, 845 S.W.2d 678, 681–82 (Mo.App.E.D.1993). Point denied.

In his final point on appeal, defendant challenges the reasonable doubt instruction, MAI–CR3d 302.04. This point has been raised and repeatedly denied. *State v. Allen*, 845 S.W.2d 671 (Mo.App.E.D.1993).

We remand for a *Batson* hearing. We affirm the judgments on the remaining issues.

CRANE, P.J., and CRAHAN, J., concur.